By the Court.
The defendant in error, a theatrical company, entered into a contract with The Comstock Amusement Company for the presentation of theatrical performances at the latter’s theatre for the week beginning Monday, January 29, 1912, and ending February 3, 1912, the performances to be given each evening and on Thursday and Saturday afternoons. The contract in its printed form provided:
“The receipts of each performance shall be ascertained by the statement of the sale at the box office, verified by the count of the tickets taken at the door. Settlement may be made at the end of each performance or at such other times as shall be mutually agreed upon by-the parties hereto.”
Supplementing the printed form was the following engagement, written therein, that The Opera Ball Company should receive “Sixty-five per cent, of the first $5000 and seventy per-cent, on all over *47 that amount. Should the gross receipts reach or exceed $8000, terms to be seventy per cent, straight.” The remaining percentage of total receipts formed the remuneration of The Comstock Amusement Company for providing and equipping the theatre for such performances.
On Monday night the playing company demanded a settlement of the receipts for the performance, which was refused, and a settlement was likewise demanded and refused for the .performance on Tuesday night. Thereupon The Opera Ball Company refused further to present its play during the week, claiming a breach of contract by the refusal to make nightly settlement.
The Comstock Amusement Company, construing the contract as one that required a settlement after the final performance, sued the playing company for damages for breach of contract. The Opera Ball Company filed its answer and recovered damages on its counterclaim for failure-to make nightly settlement.
The chief question to be determined in this case is whether, under the printed and written contract stipulations above set forth, the playing company had a legal right to demand partial settlement for each performance. In support of its counterclaim, on the trial, the latter company offered evidence of custom, which was received by the court as tending to establish the interpretation or construction of the stipulations of the contract, and to the effect that partial settlements were customarily demanded and made under playing contracts of this character.
*48 An examination of the stipulations referred to, with_ reference to settlement, established the fact that the parties were contracting with reference to that question alone. Undoubtedly it was intended to have some definite time at which such settlement, either partial or final, could be made. Under its terms any settlement made other than at the end of each performance had to be made “at such other times as shall be mutually agreed upon by the parties. hereto.” Were we to hold to the strict construction relied upon by the plaintiff in error, there could be no settlement under the contract in case both parties did not mutually agree upon the time therefor. The obvious purpose of the stipulation is that settlement could be made at the option of either party at the end of each performance. . To hold otherwise would render nugatory the specific settlement terms of the contract and would destroy the manifest intention of the parties thereto. It is true that a full settlement of the percentages accruing to each could not be ascertained until the termination of the engagement, but The Amusement Company was fully protected by the minimum percentage as to any payment it was required to make under the contract stipulations. In this view, any testimony relating to custom was wholly immaterial.
The judgment of the court of appeals is affirmed.

Judgment affirmed.

Johnson, Donahue, Wanamaker, Newman, Jones and Matthias, JJ., concur.